John T. SULLIVAN, Appellant,

v.

UNITED STATES, Appellee.

No. 09–CF–414.

District of Columbia Court of Appeals.

Argued Feb. 16, 2010.
Decided March 11, 2010.

Daniel K. Dorsey, Washington, DC, appointed by the court, for appellant.

Scott L. Sroka, Assistant United States Attorney, with whom Channing D. Phillips,

Acting United States Attorney at the time the brief was filed, and Roy W. McLeese III, Assistant United States Attorney, were on the brief, for appellee.

Before RUIZ, GLICKMAN and THOMPSON, Associate Judges.

THOMPSON, Associate Judge:

On March 27, 2009, the Superior Court convicted appellant, John Sullivan, of failure to register as a sex offender, in violation of the District of Columbia Sex Offender Registration Act of 1999 ("SORA" or "the Act"). *See* D.C.Code §§ 22–4014, 22–4015 (2001).[1] Appellant challenges his conviction on the ground that he was not required to register under SORA because, prior to the statute's enactment, he was released from custody in connection with the sex offense of which he was convicted, and because his post-SORA conviction of driving without a license is not the type of offense that could bring him within the reach of the Act. The government argues that appellant waived this argument by stipulating at trial that he is required to register under SORA and by failing to seek judicial review of his sex-offender designation within the time described in section 5 of SORA (D.C.Code § 22–4004). As to the merits of appellant's claim, the government contends that appellant's post-SORA conviction of driving without a permit did render him subject to the SORA registration requirements. We are unpersuaded by the government's waiver arguments, but we agree that appellant's post-SORA conviction brought him within the reach of the Act, and we therefore affirm the judgment of conviction.

## I.

SORA provides in pertinent part that any "person who lives, resides, works, or attends school in the District of Columbia, and who" "[c]ommitted a registration offense at any time and is in custody or under supervision on or after July 11, 2000," is a "sex offender" and must register under the Act and comply with periodic registration verification, reporting and other requirements as established by the Court Services and Offender Supervision Agency ("CSOSA"). D.C.Code §§ 22–4001(9), 22–4007, 22–4014 (2001). "Registration offenses" are those offenses described in D.C.Code § 22–4001(8)(D) (2001), including "[a]ny offense under the District of Columbia Official Code that involved … assaulting or threatening another with the intent to … commit rape." *Id.* SORA defines "in custody or under supervision" as being "incarcerated … on probation, on parole, [or] on supervised release," "because of … [b]eing convicted of … an offense under the District of Columbia Official Code." D.C.Code § 22–4001(5) (2001).

On May 13, 1982, appellant was convicted of assault with intent to rape and sentenced to four to fifteen years of incarceration. He was released from prison on December 21, 1997, almost two years before SORA was enacted. On March 29, 2002, however, appellant was convicted of driving without a permit and placed on one year of supervised probation. Subsequently, his probation was revoked and he was incarcerated until February 28, 2003.

CSOSA sent a letter to appellant at his last known address on March 18, 2003,

---

1. The conviction was a felony conviction because appellant had previously been convicted of failure to register. *See* D.C.Code § 22–4015(a) ("[I]n the event that a sex offender convicted under this section has a prior conviction under this section, or a prior conviction in any other jurisdiction for failing to comply with the requirements of a sex offender registration program, the sex offender shall be fined not more than $25,000, or imprisoned not more than 5 years, or both").

notifying him that he was required to register under SORA. Appellant eventually did register, but, on August 19, 2005, he signed a form indicating that he wished to seek judicial review in the Superior Court of his designation as a sex offender, the dispute-resolution procedure described in D.C.Code § 22–4004(a)(1)–(3). After August 19, 2005, appellant never filed a motion for judicial review pursuant to section 22–4004(a). What he did do after that date was fail repeatedly to provide verification of his registration information.

On September 10, 2007, appellant was charged with violating D.C.Code § 22–4014 for knowingly failing to report to the registration office in person to verify his registration information. On January 16, 2008, he filed a motion to dismiss the charge, contending that the SORA registration requirements do not apply to him because he completed serving his sentence for a registration offense before SORA came into effect. After the trial court denied the motion to dismiss, the parties agreed to a trial by stipulation.[2] On March 27, 2009, the court convicted appellant of failure to register. This appeal followed.

Appellant does not dispute that his pre-SORA offense—assault with intent to rape—is a registration offense. His contention on appeal is that he is not a "sex offender" within the meaning of D.C.Code § 22–4001(9)(B), and is not required to register, because the legislative history of SORA does not support interpreting the Act to require registration for an individual who committed a registration offense and completed his sentence before SORA took effect, and who came into custody or

supervision in the District after the effective date of SORA only for a non-violent traffic offense.

## II.

■ We begin our analysis by addressing briefly the government's argument that appellant waived any claim that he is not required to register because he stipulated that he "is a sex offender required to register pursuant to" SORA. We reject this argument because, unlike a guilty plea, a stipulated trial preserves a defendant's right to appeal and preserves a claim that the trial court erred in denying a pre-trial motion. *See Graves v. United States,* 490 A.2d 1086, 1099 n. 13 (D.C. 1984), *overruled on other grounds by Sell v. United States,* 525 A.2d 1017, 1021 (D.C. 1987) (referring to a stipulated trial as a vehicle for "preserv[ing] the claim of error in the denial of [a pre-trial] motion"); *Whyte v. United States,* 471 A.2d 1018, 1019 n. 3 (D.C.1984) (noting that a stipulated trial was conducted to preserve appellant's right to appeal). Here, after the trial court denied appellant's motion to dismiss and appellant's counsel objected to the ruling, the court stated specifically that "the issue is preserved." And, after the parties informed the trial court that they had entered into a stipulated trial agreement, the trial court specifically informed appellant that by entering into a stipulated trial, he gave up his right to a full trial, but preserved his right to appeal from the denial of the motion in which he sought dismissal on the ground that he is not a "sex offender." Further, when the trial court found appellant guilty of failure to

---

2. The parties stipulated that (1) "the defendant is a sex offender required to register pursuant to the Sex Offender Registration Act by virtue of his conviction in 1980–FEL–4531," (2) "the defendant failed to report to the registration office in person in June 2007, and failed to verify his address and other registration information, as required by law," and (3) "the defendant was previously convicted of a failure to register as a sex offender, in 2006–DVM–1431."

register, appellant's trial counsel stated that appellant would "appeal[ ] whether or not he is a sex offender . . . which is one of the facts [the parties had] just stipulated." These statements made clear that appellant did not intend to waive his argument that he was not required to register.[3]

## III.

■ That brings us to the government's other waiver argument (or, perhaps more accurately, its forfeiture argument), which is that appellant forfeited the opportunity to challenge his "sex offender" designation because he did not file a motion in the Superior Court seeking judicial review of the designation within the time period described in D.C.Code § 22–4004(a). In pertinent part, section 22–4004(a) provides:

(a) (1) A person, other than a person for whom a certification has been made under § 22–4003(a) [pertaining to a court order certifying that a defendant is a sex offender], may seek review of a determination by the Agency that the person is required to register or to register for life under this chapter if:

(A) The determination depends on a finding or findings which are not apparent from the [registration offense] disposition. . . .

. . .

(2) In order to seek review of a determination, as authorized by paragraph (1) of this subsection, the person shall:

(A) At the time the person is first informed by the Agency that it has determined that the person must register as a sex offender or must register as a sex offender for life, provide the Agency with a notice of intent to seek review of the determination; and

(B) Within 30 days of providing the notice of intent described in subparagraph (A) of this paragraph, file a motion in the Court setting forth the facts which he or she disputes and attaching any documents or affidavits upon which he or she intends to rely . . . (3) If a person fails to follow the procedures set forth in paragraph (2) of this subsection, he or she may nevertheless seek review of a determination, as authorized by paragraph (1) of this subsection, but only for good cause shown and to prevent manifest injustice, by filing a motion within 3 years of the date on which a determination is made by the Agency that the person must register as a sex offender or must register as a sex offender for life.

D.C.Code § 22–4004(a)(1)–(3).

There is no dispute that appellant did not file a motion for judicial review within the time prescribed in either section 22–4004(a)(2) or section 22–4004(a)(3) (and, as to the latter section, appellant has not made a claim of manifest injustice or attempted to show good cause for delay). However, rather than affording a basis for readily rejecting appellant's claim, the government's forfeiture argument raises the issue of whether, in light of the particular basis of appellant's challenge to his "sex offender" designation, appellant was required to seek judicial review of that

3. We note the government's assertion that appellant's argument on appeal is different from the argument he made in the trial court (inasmuch as he now emphasizes the non-violent nature of his post-SORA offense, rather than the fact that his conviction for a sex offense was pre-SORA, in challenging his "sex offender" designation). However, in denying appellant's motion to dismiss, the trial court relied on the rationale that appellant was subject to the SORA registration because he "c[a]me into the system under supervision or custody for any offense" after the Act went into effect. That is the issue the court said was "preserved" through the argument and objections of appellant's trial counsel.

designation, if at all, within the time prescribed in section 22–4004(a). We conclude that he was not.

An individual may seek review of a designation as a sex offender via the dispute resolution procedures set out in section 22–4004(a)(2) if "the determination depends on findings" that are not apparent from the conviction of a registration offense. D.C.Code § 22–4004(a)(1).[4] The statutory language and the legislative history both suggest that the findings envisioned by this section involve *factual* determinations (rather than solely a legal determination, such as is entailed in resolving appellant's claim). D.C.Code § 22–4004(a)(2)(B) provides that, in the motion for judicial review, an individual is to "set[ ] forth *the facts which he or she disputes* and attach[ ] any documents or affidavits upon which he or she intends to rely" (italics added). Similarly, the legislative history of the Act explains that "recourse to the dispute resolution process is authorized ... where *a fact* necessary to the registration requirement is not apparent from the conviction or other disposition."[5] *Council of the District of Columbia, Committee on the Judiciary, Report on Bill 13–350, The District of Columbia Sex Offender Registration Act of 1999*, 24 (1999) [hereinafter *Judiciary Committee Report*] (italics added).[6] By contrast, here—no issue having been raised about the fact or nature of appellant's post-SORA conviction or about his having been in custody as a result of his post-SORA

4. Such findings include but are not limited to findings regarding "(i) [w]hether the victim of an offense was a minor or under 12 year[s] of age; (ii) [w]hether certain sexual acts or contacts were forcible; (iii) [w]hether the exemption of § 22–4016(b) [pertaining to sexual offenses between consenting adults, sexual offenses involving undercover law enforcement officers, and certain misdemeanor offenses against adults] applies; or (iv) [w]hether the standards under § 22–4001(6)(E) or (8)(G) for coverage [of] offenses under the laws of other jurisdictions are satisfied [involving a determination about whether the conduct involved would constitute a registration offense in the District]." The review procedure also is available to an individual who challenges his designation on the ground that he "was convicted or found not guilty by reason of insanity of a registration offense ... or ... was determined to be a sexual psychopath." D.C.Code § 22–4004(a)(1)(A)–(B).

5. The Report lists three other situations in which recourse to the section 22–4004(a) dispute-resolution process is authorized: "where a person contends that an offense he committed under the law of another jurisdiction is not equivalent or substantially similar to a District of Columbia registration offense," "where the exceptions ... for consensual adult conduct and misdemeanor offenses involving undercover law enforcement officers are asserted," and "where a person contends that the records establishing his commission of the pertinent offense or offenses are erroneous." *Judiciary Committee Report* 24. Resolution of each of these types of contentions (none of which is involved here) involves at least some factual inquiry. *Cf. In re Doe ("S.D.")*, 855 A.2d 1100, 1105 (D.C.2004) (recounting the specific facts underlying S.D.'s federal conviction as basis for reviewing trial court's determination, pursuant to section 22–4004(a), that the federal offense was substantially similar to a District of Columbia registration offense).

6. The discussion in the text reflects the familiar principles that, when faced with a question of statutory interpretation, we first examine the text of the statute to determine whether its meaning is clear and unambiguous, *see Jeffrey v. United States*, 892 A.2d 1122, 1128 (D.C.2006); *Davis v. United States*, 397 A.2d 951, 956 (D.C.1979), and, if the text is not dispositive, we look to the legislative history. *See In re W.M.*, 851 A.2d 431, 441 (D.C.2004) (For "a question of statutory construction," "we must begin by ascertaining the Council's intent in enacting SORA"). In particular, to determine the D.C. Council's intent in enacting SORA, we may look to the Judiciary Committee Report. *See Doe*, 855 A.2d at 1104; *In re W.M.*, 851 A.2d at 441.

conviction—the issue regarding appellant's designation as a "sex offender" turns solely on a *legal* interpretation that appellant's "custody or . . . supervision on or after July 11, 2000" [7] in connection with his conviction of driving without a permit made him subject to the SORA registration requirements. It is not clear that the Council envisioned the section 22–4004 review mechanism as a vehicle (let alone the sole vehicle) for challenging such a legal interpretation. More to the point, we are not persuaded that the Council intended timely resort to the section 22–4004(a) dispute-resolution mechanism to be a prerequisite to obtaining judicial review of a legal interpretation that underlies a CSOSA "sex offender" designation when the interpretation is challenged in an appeal from a failure-to-register conviction. We conclude that appellant's failure to resort to that mechanism is no bar to our consideration of his claim. [8]

## IV.

■ We now turn to the merits of appellant's argument that he was not required to register because the legislature did not intend that a post-SORA conviction of a nonviolent traffic offense such as driving without a permit would trigger application of the Act's registration requirements to an individual whose only conviction for a registration offense was pre-SORA. Because this is an issue as to the reach of SORA, our review is *de novo*. *See, e.g., Mitchell v. United States*, 977 A.2d 959, 963 & n. 8 (D.C.2009) (reviewing *de novo* the trial court's interpretation of the SORA term "in custody").

■ By its terms, SORA mandates registration for any individual who "[c]ommitted a registration offense at any time and is in custody or under supervision on or after July 11, 2000" because of "[b]eing convicted of . . . an offense under the District of Columbia Official Code." D.C.Code § 22–4001(5)(A)(I), (9). The language "convicted of . . . an offense under the District of Columbia Official Code" is broad and unambiguous and does not exclude any type of conviction for which a court may order an individual into custody or supervision. [9] The legislative history underscores that the Council of the District of Columbia intended the Act to have such a broad reach. The Judiciary Committee explained that "a person who had merged into the general population—because he had finished serving his sentence for a registration offense before the enactment of this act—would generally not be required to register. But if that person later returned to D.C. custody or supervision because of conviction of another crime, he would become subject to the act's registration provisions." *Judiciary Committee Report* 22. In this example, the Committee referred to "another crime" without limiting the triggering offense to

---

7. D.C.Code § 22–4001(9)(B).

8. We do not purport to resolve the issue of whether an individual's failure to seek timely judicial review of a finding of the type that *is* within the scope of the section 22–4004 dispute-resolution mechanism would later foreclose the individual from seeking review of his "sex offender" designation on appeal from a failure-to-register conviction.

9. Because this provision of the Act is unambiguous, we do not have occasion to apply the rule of lenity, which "requires ambiguous criminal laws to be interpreted in favor of the defendant[] subjected to them." *Holloway v. United States*, 951 A.2d 59, 65 (D.C.2008) (citation omitted). The rule of lenity "helps to resolve ambiguity in criminal statutes," but it "can tip the balance in favor of criminal defendants only where, exclusive of the rule, a penal statute's language, structure, purpose and legislative history leaves its meaning genuinely in doubt." *Id.* (citations omitted).

crimes of a sexual nature, violent crimes, or any other category of crimes.[10] Moreover, as we recognized in *Doe*, the Council contemplated that the terms of the Act "would be given a broad construction to effectuate the goals of the legislation." 855 A.2d at 1105 (explaining also that SORA is a "remedial regulatory enactment" that "should be liberally construed for the benefit of the class it is intended to protect," *id.* at 1102 (citations omitted)). There can be no doubt that appellant's post-SORA conviction of driving without a permit brought him within SORA's reach.

## V.

Considering all the foregoing, and appellant having cited no other reason why the SORA registration requirements should not apply to him, we can find no error in the trial court's denial of his motion to dismiss the charge of failure to register as a sex offender, and we therefore uphold his conviction.

*Affirmed.*

10. Testimony by a representative of the United States Attorney's Office, which worked with the D.C. Council to develop SORA, also underscores the Act's intended broad reach. The representative testified before the Judiciary Committee that, in order to protect the community adequately, "[SORA provisions] must cover as many offenders as possible" and must apply more than just prospectively. To that end, the definition of "sex offender" requires "registration of *any* sex offender who returns to the criminal justice system … by being convicted of *any* offense, if he would have had to register had the law been in effect at the time of his earlier conviction for a sex offense." *District of Columbia Sex Offender Registration Act of 1999: Hearings on Bill 13–350 Before the Committee on the Judiciary of the Council of the District of Columbia*, 4 (1999) (testimony of Assistant United States Attorney, Patricia A. Riley) (emphasis added). *Cf. Scarborough v. Winn Residential L.L.P./Atl. Terrace Apts.*, 890 A.2d 249, 256 (D.C.2006) (quoting *Department of Hous. & Urban Dev. v. Rucker*, 535 U.S. 125, 131, 122 S.Ct. 1230, 152 L.Ed.2d 258 (2002)) ("[T]he word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind'").